UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CARL BENNETT,<br>    Plaintiff,<br><br>vs.<br><br>MICHIGAN DEPT. OF CORRECTIONS,<br>MICHIGAN DEPT. OF CORRECTIONS<br>Staff official capacity and personal capacity,<br>JACKSON ALLEGIANCE HOSPITAL<br>and DOCTOR MAHENDER MACHA.<br>    Defendants. | CASE NO:  2:15-cv-14465<br><br>HON. MATTHEW F. LEITMAN<br><br>MAG. R. STEVEN WHALEN |
| CARLA D. AIKENS, P.C.<br>CARLA D. AIKENS (P69530)<br>Attorneys for Plaintiff<br>615 Griswold Ste. 709<br>Detroit, Michigan 48226<br>(844) 835-2993<br>carla@aikenslawfirm.com | THE KITCH FIRM<br>RICHARD J. JOPPICH (P41709)<br>Attorney for Allegiance Health<br>2379 Woodlake Drive, Suite 400<br>Okemos, Michigan 48864-6032<br>(517) 381-4426<br>richard.joppich@kitch.com |

**AMENDED COMPLAINT**

Plaintiff, CARL BENNETT, by and through his Attorneys, CARLA D. AIKENS P.C., states:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 12101 et seq, and 29 U.S.C. § 794. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and § 2201 (Declaratory Judgment Act).

1

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events or omissions complained of occurred in this district.

3. This suit is brought and jurisdiction lies pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 USC 12131, et seq.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## THE PARTIES

5. At all relevant times, Plaintiff, CARL BENNETT, was an inmate within the Michigan Department of Corrections ("MDOC"), and is correctly housed at Warden Jeffrey Woods 4269 W. M-80 Kincheloe, MI 49784

6. At all relevant times, upon information and belief, Defendant Doctor Mahender Macha, was engaged in the practice of his profession in Jackson County, Michigan, and held himself out to the public and, in particular, to Plaintiff as a skilled medical doctor specializing in Cardiothoracic Surgery with the necessary skill to perform open heart surgery.

7. At all relevant times Defendant, Jackson Allegiance Hospital was and still is a corporation organized and existing under the laws of Michigan, and at all relevant times, and for many years past, operated and maintained the hospital pursuant to MCL 333.20141 and MCL 333.21513 as a place where people afflicted with illness and disease are given care and treatment for consideration.

8. At all relevant times, the MDOC operated the correctional facilities where Plaintiff was housed during the events alleged in this case including Duane Walters Hospital Center ("Duane Walters Hospital"), which is located within the MDOC system.

9. MDOC state prison system is charged with overseeing the custody and care of offenders in Michigan.

10. MDOC is a public facility with programs and services.

11. MDOC is the recipient of federal funds.

## STATEMENT OF FACTS

12. Upon being processed to begin his sentence, Plaintiff entered into the custody of MDOC in approximately December of 2013.

13. As part of the processing procedure, Plaintiff went through a medical quarantine process.

14. During processing, upon information and belief, MDOC received a medical report from the Otsego County Sheriff Department which detailed a number of medical conditions Plaintiff suffered from, including, but not limited to: hypertension, essential NOS infarction, myocardial, old disease, ischemic heart and chronic NEC asthma.

15. Due to Plaintiff's medical condition, upon information and belief, it was recommended that Plaintiff be placed on a lower level of the correctional facility so Plaintiff could avoid the use of stairs.

16. Despite this fact, Plaintiff was placed on an upper level of the facility, requiring Plaintiff to use stairs.

17. Approximately twelve (12) days into the quarantine process, Plaintiff suffered a heart attack.

18. Plaintiff stated that he hit his head during the heart attack.

19. Upon information and belief, Plaintiff was left in his cell, unsupervised, for an extended period of time, despite his stated medical conditions.

20. MDOC staff only discovered Plaintiff in enough time to save Plaintiff's life because fellow inmates continued to make noise to get the staff's attention.

21. Plaintiff was taken to Jackson Allegiance Hospital, where he had to be revived because, upon information and belief, Plaintiff had medically expired.

22. After being sedated, Plaintiff was handcuffed to the bed and remained handcuffed for a week.

23. During that week, Plaintiff was left unattended for several hours at a time.

24. During his stay at Jackson Allegiance and prior to undergoing heart surgery, Plaintiff contracted pneumonia.

25. Upon information and belief, hospital pneumonia is a preventable condition.

26. Despite Plaintiff's pneumonia diagnosis and, upon information and belief, Jackson Allegiance Hospital staff performed only a single graft surgery on Plaintiff and opined that they could not render additional treatment because Plaintiff had contracted pneumonia.

27. Following the coronary artery bypass graft surgery at Allegiance Hospital, Plaintiff was discharged to Duane Walters Hospital, the medical facility at MDOC.

28. Although Dr. Macha recommended that Plaintiff's cell be relocated to a lower level so that he could avoid the use of stairs, MDOC staff or contractors again placed Plaintiff on a level which required him to use the stairs.

29. Plaintiff remained at Duane Walters Hospital for approximately a month, while he recovered from surgery.

30. During his time at Duane Walters Hospital, the medical staff gave Plaintiff only three out of the fourteen medications prescribed by his physician following Plaintiff's open heart surgery.

31. Plaintiff filed multiple grievances regarding the medical staff's failure to administer his medication in the manner prescribed by his doctor following his open heart surgery at Jackson Allegiance Hospital.

32. Plaintiff filed the first grievance regarding his medication in January of 2014.

33. Approximately a month after Plaintiff filed his grievance, MDOC responded that Plaintiff, a disabled prisoner who had surgery in an MDOC facility, failed to send a request for his medication following his open heart surgery.

34. However, when Plaintiff was discharged from Duane Walters Hospital, he gave the documents listing his prescribed medications to the MDOC medical staff.

35. Moreover, MDOC admitted that Plaintiff did not have access to the prescribed medication for a week and a half following his open heart surgery.

36. Despite MDOC's initial failure to provide Plaintiff's medication in a timely manner upon his initial release from Duane Walters Hospital, MDOC staffed restricted Plaintiff's medication for a second time, in approximately February of 2014, for approximately five days.

37. In approximately March of 2014, Plaintiff filed a Step II Grievance Appeal because he continued to have trouble obtaining his medication.

38. Plaintiff included an attachment to his Step II grievance, stating that MDOC's denial of medication constituted a violation of the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

39. In response to Plaintiff's Step II Grievance Appeal, MDOC, rejected Plaintiff's appeal, wrongly, as untimely and later followed its initial answer with a response because it failed to investigate Plaintiff's grievance in the time allotted by the MDOC policy.

40. MDOC ultimately rejected Plaintiff's Step II Grievance Appeal, stating that giving Plaintiff his medication may constitute a safety hazard to Plaintiff because he had a history of substance abuse — a fact known to medical staff at the time the medication was prescribed.

41. MDOC also encouraged Plaintiff not to state the law because stating the law was not necessary to file a grievance.

42. During the time that Plaintiff filed his grievances for lack of access to medication, Plaintiff began experiencing recurring chest pain within approximately two months following the initial heart surgery.
43. Plaintiff was sent to Jackson Allegiance Hospital for a cardiac cauterization, a process whereby a tube, with a camera, is inserted into Plaintiff's person to look at his heart.
44. After medical staff at Jackson Allegiance received the results, Plaintiff was offered a "redo" surgery at a different facility.
45. Upon information and belief, Jackson Allegiance declined to perform the "redo" surgery.
46. Plaintiff was admitted to McLaren Hospital in Lansing, Michigan in approximately July of 2014, about six months after the initial surgery at Jackson Allegiance Hospital.
47. McLaren Hospital staff performed several diagnostic procedures which revealed a number unsuccessful aspects from the surgery performed at Jackson Allegiance Hospital including, but not limited to:
    a. Plaintiff's right coronary artery was chronically occluded, even before the first surgery at Jackson Allegiance;
    b. There was no bypass graft connected to the right artery;
    c. Even though the left graft remained, the circumflex marginal was at 70%;
    d. Plaintiff had recurrent stenosis at the site of the original coronary artery bypass graft; and
    e. Plaintiff had developed angina.
48. McLaren staff informed Plaintiff that his initial surgery had to be redone; without it, Plaintiff only had thirty (30) days to live.
49. Specifically, McLaren staff needed to redo the sternotomy from the previous surgery and add three additional grafts, whereas only a single graft had been performed during the first procedure.
50. Following the surgery at McLaren, Plaintiff continued to have problems with obtaining his medication in a timely manner. As such Plaintiff continued to file grievances regarding MDOC's failure to provide his medication in a timely manner.

51. In 2015, Plaintiff filed grievances all the way up to Step III, at which point he noted that he planned to sue for medical negligence and that he would file another complaint after Step III, noting that he just wanted the issue resolved.
52. Plaintiff served notice of his intent to file a formal complaint prior to filing his complaint in civil court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

53. Following the second open heart surgery at McLaren Hospital and his subsequent recovery, Plaintiff filed a notice of intent to sue Jackson Allegiance Hospital and Dr. Macha for negligence and medical malpractice for performing the surgery in a negligent manner and for failing to repair the damage from its negligent procedure.
54. Plaintiff also stated his intent to sue for MDOC's failure to observe the cell placement accommodations recommended by his physician and MDOC's failure to properly care for him.
55. Prior to filing a notice of his intent to file a grievance, Plaintiff appealed MDOC's failure to provide him with medications as his physician prescribed.
56. Plaintiff took MDOC's recommendations in response to his grievances and continued to have problems obtaining his medications, as noted in Plaintiff's Step III grievance.
57. Plaintiff's grievances and intent to sue were completed without the assistance of counsel.
58. Plaintiff filed the initial Complaint in this matter on December 24, 2015, without the assistance of counsel or his Allegiance Hospital medical records, although he requested the records prior to filing suit.

## COUNT I

### VIOLATION OF THE EIGHTH AND FOURTHTEENTH AMENDMENT
### (MDOC)

59. Plaintiff incorporates by reference all allegations from the proceeding paragraphs.

7

60. By their policies and practices described herein, Defendant, MDOC, subjected Plaintiff to a substantial risk of serious harm and injury from inadequate medical care in failing to provide the medication proscribed by his physician following Plaintiff's open heart surgery procedure and further placing the burden on Plaintiff to correct the facility's failure to provide him with his medication in a timely manner.

61. These policies and practices were implemented by Defendant and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities.

62. These policies and practices are the proximate cause of the Plaintiff's and the Plaintiff deprivation of rights secured by the United States Constitution under the Eighth Amendment.

63. Defendant, MDOC, is aware of all of the deprivations complained of herein, and condoned or have been deliberately indifferent to such conduct

## COUNT II

**VIOLATION OF AMERICANS WITH DISABILITIES ACT AND AMERICANS WITH DISABILITIES ACT AMENDMENT ACT (Against Defendant MDOC)**

64. The ADA prohibits public entities, including MDOC, from denying "a qualified individual with a disability . . . the benefits of the services, programs, or activities of the public entity" because of the individual's disability. 42 U.S.C. § 12132.

65. Defendant MDOC is responsible for all violations of the ADA committed by hired and contracted medical staff involved in this matter.

66. The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including but not limited to, "caring for oneself, performing manual tasks,

seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A).

67. Plaintiff is a qualified individual with a disability because he has multiple physical impairments, including a heart condition, that substantially limits his ability to lift, walk, breathe and to perform manual tasks for an extended period of time.

68. The programs, services, and activities that MDOC provides to prisoners include, but are not limited to, sleeping, eating, showering, toileting, exercising, safety and security, administrative, disciplinary, and classification proceedings, medical, mental health, and dental services, the library, educational, vocational, substance abuse, and other classes, and discharge services. MDOC's programs, services, and activities are covered by the ADA.

69. Under the ADA, Defendant MDOC must provide prisoners with disabilities reasonable accommodations and modifications so that they can avail themselves of and participate in all programs and activities offered by Defendants.

70. Defendant MDOC failed to accommodate Plaintiff's disability by engaging in the following behavior:

   a. failing to "ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity," 28 C.F.R. § 35.152(b)(1);

b. failing to "ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals," 28 C.F.R. § 35.152(b)(2);

c. failing to "implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 [accessibility] Standards, so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing," 28 C.F.R. § 35.152(b)(3);

d. failing or refusing to provide Plaintiff with reasonable accommodations and other services related to their disabilities, see generally 28 C.F.R. § 35.130(a);

e. denying Plaintiff "the opportunity to participate in or benefit from [an] aid, benefit, or service" provided by Defendants, 28 C.F.R. § 35.130(b)(1)(i);

f. failing to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," 28 C.F.R. 35.130(b)(7);

g. failing to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the [ADA]," 28 C.F.R. 35.133(a);

h. failing to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity, 28 C.F.R. § 35.160(b)(1).

71. As a result of MDOC's discrimination and failure to provide reasonable accommodations, Plaintiff did not have equal access to prison activities, programs, and services for which he was otherwise qualified.

72. At all times relevant to this action, MDOC was the recipient of federal funding within the meaning of the Rehabilitation Act. As recipients of federal funds, they are required to reasonably accommodate prisoners with disabilities in their facilities, programs, activities, and services, and to provide a grievance procedure.

## COUNT III

### VIOLATION OF REHABILITATION ACT (MDOC)

73. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

74. Plaintiff is a qualified individual with disabilities as defined in the Rehabilitation Act.

75. By failing to reasonably accommodate Plaintiff, MDOC violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

76. As a result of MDOC's discrimination in failing to provide Plaintiff a reasonable accommodation, Plaintiff did not have equal access to prison activities, programs, and services for which they are otherwise qualified.

77. MDOC's methods of administration as described in this Complaint subject individuals with disabilities to discrimination on the basis of disability, in violation of both the ADA, 28 C.F.R. § 35.130(b)(3), and the Rehabilitation Act, 28 C.F.R. § 41.51(b)(3). Section 504's regulations prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration . . .(i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the

objectives of the recipients program with respect to handicapped persons." 28 CFR 35.130(b)(3)(i)-(iii).

78. By depriving Plaintiff of timely sick call responses, adequate and qualified medical staffing, medical facilities, medical equipment, medication administration, chronic illness care, surgery, screening, MDOC is "defeating or substantially impairing accomplishment of" the provision of constitutionally adequate medical care to prisoners. That failure has a more harmful impact on prisoners with disabilities and therefore has the effect of discriminating on the basis of disability.

## COUNT IV

## VIOLATION OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT (MDOC)

79. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

80. Plaintiff is a person with a disability as the PWDCRA defines that term. MCL 37.1103.

81. MDOC is a public service or accommodation as defined by MCL 37.1301.

82. The disability is unrelated to Plaintiff's ability to enjoy the public accommodation or public service.

83. MDOC has intentionally committed one or more of the acts prohibited by MCL 37.1302, including: (1) denying enjoyment of goods, services, facilities, or accommodations at a place of public accommodation or public service; (2) denying full and equal enjoyment of the public accommodation or public service because of the use by an individual of adaptive devices or aids; or (3) publishing a notice that full enjoyment of public accommodations or public service will be denied a person with a disability or that the person with a disability is not welcome at a place of public accommodation or public service.

84. The amount in controversy exceeds $75,000 and is otherwise within the jurisdiction of this court.

## COUNT V

## MEDICAL MALPRATICE (JACKSON ALLIEGENCE HOSPITAL AND DR. MACHA)

85. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

86. At all relevant times, Defendant, Allegiance Jackson Hospital, represented and held out to the public and, in particular, to Plaintiff, that the hospital was equipped, qualified, and prepared to receive the public and, in particular, Plaintiff, for treatment and care and that it employed and maintained on its staff skilled and competent physicians, surgeons, anesthesiologists, residents, interns, nurses, and, in general, other competent help to conduct the business of and to operate the hospital.

87. At all relevant times, Defendants Allegiance Jackson Hospital and Doctor Mahender Macha, by their authorized agents, servants, and employees as well as Defendant Doctor Mahender Macha, undertook to examine, diagnose, treat, attend, and care for Plaintiff.

88. In approximately December of 2013, Plaintiff submitted to the care and treatment of Defendants Allegiance Jackson Hospital, and Doctor Mahender Macha, for the specific purpose of receiving medical care, assistance, and advice and impliedly or expressly hired and employed these Defendants to do what was proper and necessary according to the standards of medical doctors and obstetricians prevailing throughout the United States. These Defendants impliedly or expressly represented to use due, reasonable, and proper skill in caring for and treating Plaintiff.

89. Defendants Allegiance Jackson Hospital and Doctor Mahender Macha, in disregard of their duties and obligations to Plaintiffs and at variance with national standards, committed the following acts and omissions of negligence and malpractice:

   a. employed physicians, surgeons, radiologists, technicians, and other personnel who were unskilled, incompetent, and unfit for such employment and permitted them to attend, advise, diagnose, and treat Plaintiffs;

   b. failed to draft, promulgate, adopt, or enforce appropriate rules, regulations, policies, procedures, bylaws, orders, and constitutional provisions that could and should have prevented the acts and negligence committed against Plaintiff and that also could and should have prevented the injuries that Plaintiff suffered, all of which could and should have been accomplished;

   c. failed to provide and furnish Plaintiff with the proper medical care and treatment;

   d. committed other acts and omissions that constituted negligence or malpractice to be determined by discovery.

90. As a direct and proximate result of the negligence of Defendants, together and individually, as described and alleged in this Complaint, Plaintiff suffered damages including, but not limited to, immediate graft failure necessitating a second heart surgery where he received three grafts instead of one, recurring chest pain, and preoperative pneumonia.

91. As a further direct and proximate result of the negligence and malpractice of Defendants, together and individually, as alleged in this Complaint, Plaintiff has been required to undergo extensive medical care and treatment, including hospitalization and will likely need a heart transplant in the near future.

92. As a further direct and proximate result of the negligence and malpractice of Defendants, together and individually, as described and alleged in this complaint, Plaintiff has suffered a deprivation of the normal enjoyments of life as well as pain, suffering, humiliation, embarrassment, diminution of earning capacity, and mental and emotional anguish and anxiety.

WHEREFORE, Plaintiff requests the court to award him a judgment against Defendants Allegiance Jackson Hospital and Doctor Mahender Macha, jointly and severally, for whatever amount the trier of fact finds Plaintiff to be entitled to, together with interest, costs, and attorney fees.

## COUNT VI

### NEGELIGENT INFLICTION OF EMOTIONAL DISTRESS (ALL DEFENDANTS)

93. Plaintiff incorporates by reference all allegations in the preceding paragraphs.
94. Defendants knew or reasonably should have known that the conduct described herein would and did proximately result in physical and emotional distress to Plaintiff.
95. At all relevant times, Defendants had the power, ability, authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.
96. Despite said knowledge, power, and duty, Defendants negligently failed to act so as to stop engaging in the conduct described herein and/or to prevent or prohibit such conduct or otherwise protect Plaintiff. To the extent that said negligent conduct was perpetrated by certain individuals not affiliated with Defendants, Defendants confirmed and ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would

thereby increase, and with a wanton and reckless disregard for the deleterious consequences to Plaintiff.

97. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, anguish, emotional and physical injuries, as well as economic losses, all to his damage in amounts to be proven at trial.

WHEREFORE, Plaintiff asks this Court to award them a judgment against all Defendants jointly and severally, for whatever amount the trier of fact finds Plaintiffs to be entitled to, together with interest, costs, and attorney fees.

## ATTORNEYS' FEES AND COSTS

98. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs. Plaintiff also requests attorneys' fees, costs, and expenses against MDOC for the ADA and Rehabilitation Act claims, pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

99. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants, as alleged herein, unless Plaintiff is granted the relief they request. The need for relief is critical because the rights at issue are paramount under the United States Constitution and the laws of the United States.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award the following relief:

1. Grant declaratory and injunctive relief, as set out in this Complaint;

2. Enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law, from subjecting Plaintiff to the illegal and unconstitutional conditions, acts, omissions, policies, and practices set forth above;

3. Order Defendants and their agents, employees, officials, and all persons acting in concert with them under color of state law, to develop and implement, as soon as practical, a plan to eliminate the substantial risk of serious harm that Plaintiff has suffered due to Defendants' inadequate medical care. Defendants' plan shall include but not be limited to:

4. Staffing that is sufficient to provide Plaintiff with timely access to qualified and competent clinicians who can provide routine, urgent, emergent, and specialty health care;

5. Policies and practices that provide timely access to health care, including reliable screening for medical conditions; timely access to medically necessary surgeries; and access to adequate rehabilitative care;

6. Timely and competent responses to health care emergencies;

7. Timely and competent prescription and distribution of medications and supplies necessary for medically adequate care;

8. Timely access to competent care for chronic diseases;

9. Medically appropriate follow-up care, including but not limited to appropriate dietary, duty status, and medical monitoring plans;

10. Basic sanitary conditions that do not promote the spread or exacerbation of diseases or infections, including but not limited to maintaining sufficient hygiene supplies and a smoke-free environment;

11. Reasonable accommodations for individuals with disabilities;

12. A regular assessment of health care staff, services, procedures, and activities designed to improve outcomes, and to identify and correct errors or systemic deficiencies; and

13. Any other forms of relief necessary for the delivery of constitutionally adequate medical care.

14. Enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law, from retaliating against Plaintiffs in any manner for filing this Complaint;

15. Find that Plaintiff is the prevailing party in this case and award them attorneys' fees, court costs, expert costs, and litigation expenses under 42 U.S.C. §§ 1988 and 12205;;

16. Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and,

17. Grant such other and further relief as appears reasonable and just, to which Plaintiffs may be entitled.

                                    Respectfully Submitted,

                                    /s/ Carla D. Aikens
                                    Carla D Aikens (P69530)
                                    CARLA D. AIKENS, P.C.
                                    Attorneys for Plaintiff
                                    615 Griswold Street, Suite 709
                                    Detroit, MI 48226
Dated: December 2, 2016           carla@aikenslawfirm.com

## **JURY DEMAND**

Plaintiff demands a jury trial.

                                        Respectfully Submitted,

                                        /s/ Carla D. Aikens
                                        Carla D Aikens (P69530)
                                        CARLA D. AIKENS, P.C.
                                        Attorneys for Plaintiff
                                        615 Griswold Street, Suite 709
                                        Detroit, MI 48226
Dated:  December 2, 2016             carla@aikenslawfirm.com