UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL BENNETT,

       Plaintiff,                            No. 15-14465

v.                                         District Judge Matthew F. Leitman
                                               Magistrate Judge R. Steven Whalen

MICHIGAN DEPT. OF CORRECTIONS,
ET AL.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**

On December 24, 2015, Plaintiff Carl Bennett, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint in this Court. Counsel later filed an appearance on behalf of Plaintiff, and the Court granted Plaintiff's motion to amend his complaint [Doc. #35]. The amended complaint is found at Doc. #34. On December 19, 2016, Defendant MDOC filed a motion to dismiss the amended complaint [Doc. #37], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that Defendant MDOC be DISMISSED WITHOUT PREJUDICE.

I. FACTS

Following his sentencing, Plaintiff entered the custody of the MDOC in December of 2013, initially going through a medical quarantine process. *Amended Complaint* [Doc. #34], ¶¶ 12-13. He alleges that the MDOC received a report from the Ostego County Sheriff's Department detailing his medical history, which included a history of hypertension and cardiac disease. *Id*. ¶ 14. He states that despite a recommendation that he be placed on a lower level unit to avoid the use of stairs, he was placed on an upper level, requiring him to use stairs. Approximately 12 days later, he suffered a heart attack. *Id*. ¶ 17. He was taken to Jackson Allegiance Hospital, where he was revived. *Id*. ¶ 21. Before undergoing heart surgery, he contracted pneumonia. Jackson Allegiance Hospital performed "only a single graft surgery" on Plaintiff, opining that additional treatment could not be performed because Plaintiff had contracted pneumonia. *Id*. ¶ 26. Plaintiff was discharged to Duane Waters Hospital[1], an MDOC facility. *Id.* ¶ 27.

Plaintiff alleges that at the Duane Waters Hospital, he received only three of the fourteen medications that his physician had prescribed following his surgery at Jackson Allegiance. *Id.* ¶ 30. He states that following his release from Duane Waters, MDOC staff restricted his medication for a second time in February of 2014. *Id*. ¶ 36.

---

[1] The amended complaint misspells Duane Waters as "Duane Walters." I will use the correct spelling in this Report and Recommendation.

Approximately two months after his initial surgery, Plaintiff experienced recurring chest pain, and was sent to Jackson Allegiance for cardiac catheterization. *Id*. ¶¶ 42-43. He alleges that medical staff at Jackson Allegiance declined to perform a "redo" surgery, but offered him this treatment at a different facility. In approximately July of 2014, about six months after the initial surgery, Plaintiff was admitted to McLaren Hospital in Lansing, Michigan. *Id.* ¶¶ 44-45. McClaren Hospital staff identified a number of unsuccessful aspects of the previous surgery at Jackson Allegiance, and informed Plaintiff that the initial surgery had to be re-done, or otherwise Plaintiff would have only 30 days to live. *Id.* ¶¶ 47-48. McClaren staff added three additional grafts. Plaintiff alleges that following the McClaren surgery, he continued to have problems obtaining his medications in a timely manner. *Id*. ¶¶ 49-50.

Plaintiff brings the following counts against the MDOC:

Count I: Eighth and Fourteenth Amendment violations, based on alleged deliberate indifference to Plaintiff's serious medical needs.

Count II: Violation of Americans with Disabilities Act, based on MDOC's alleged failure to accommodate Plaintiff's disability.

Count III: Violation of the Rehabilitation Act, based on MDOC's alleged failure to provide Plaintiff reasonable accommodations so as to afford him equal access to prison

activities, programs, and services.[2]

In its motion [Doc. #37], Defendant MDOC argues that the complaint against it should be dismissed based on Plaintiff's failure to exhaust his administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a).

## II. STANDARD OF REVIEW

### A. Exhaustion

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means

---

[2] In his response [Doc. #39], Plaintiff states that he voluntarily dismisses Count IV (Michigan Persons With Disabilities Civil Rights Act) and Count VI (State law claim of Negligent Infliction of Emotional Distress) as to Defendant MDOC. Under Fed.R.Civ.P. 41(a)(1)(A)( i ), a plaintiff "may dismiss an action without a court order" by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." The Rule permits a plaintiff to voluntarily dismiss not only an action, but a claim. *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 541 (6th Cir. 2001). Unless a plaintiff's notice states otherwise, a dismissal under Rule 41(a)(1) is without prejudice. *See* Rule 41(a)(1)(B). Therefore, I recommend that Plaintiff's response brief [Doc. #39] be construed as a Notice of Dismissal, and that Counts IV and VI of the amended complaint be deemed to have been voluntarily dismissed without prejudice.

"proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

A dismissal for failure to exhaust is without prejudice. *Knuckles El v. Toombs,* 215 F.3d 640 (6th Cir.2000); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D.Mich. 2011).

### III. DISCUSSION

Defendant seeks dismissal on the theory that Plaintiff failed to properly exhaust his administrative remedies before filing suit.

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints.[3] This grievance procedure consists of four acts an inmate must undertake before seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with

---

[3] PD 03.02.130 is reproduced in Exhibit A to Defendants' Motion.

the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

PD 03.02.130 § R provides that a prisoner must include "the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." (Emphasis in original). To constitute proper exhaustion under MDOC policy, a specific defendant generally must be identified at Step I of the process. *See Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), *abrogated on other grounds* by *Jones v. Bock*, 549 U.S. 199 (2007). ("[W]e understand [MDOC] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process.").[4] In addition, a

---

[4] In its initial motion to dismiss, Defendant argued only that Plaintiff failed to exhaust his administrative remedies because he did not pursue an appeal through Step III of the process. In its reply brief [Doc. #43], Pg. ID 582, Defendant argues for the first time that Plaintiff failed to exhaust because he did not name a specific individual being grieved at Step I of the process. Arguments raised for the first time in a reply brief are waived. *See United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). In addition, where a prisoner is not able to identify all appropriate personnel in compliance with the grievance procedure, there is no failure to exhaust. *See e.g., Merriweather v. Zamora,* 2006 WL 2711809, *9 (E.D.Mich.2006), citing *Thomas v. Woolum,* 337 F.3d 720, 734

Michigan prisoner must appeal a grievance through Step III of the procedure. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier v. Laurel County, KY.*, 636 F.3d 218, 224 (6th Cir. 2011).

In support of its motion, Defendant has submitted as Exhibit B an MDOC Step III Grievance Report indicating that for the period of May, 2009 to the present, Plaintiff did not file any Step III grievance appeals. Attached as Exhibit A to its reply brief [Doc. #43] is the affidavit of Richard D. Russell, Manager of the Grievance Section of the MDOC. Mr. Russell states that since May 1, 2011, all Step III appeals are entered into a database. He states that he "caused a search of the database relevant to Step III grievance appeals filed by Carl Bennett #298713 and attached a copy of that report." He states that Plaintiff "has not filed any Step III grievance appeals as of September 8, 2016."

Acknowledging that exhaustion is an affirmative defense that Defendant must raise, Plaintiff first argues that Defendant "failed to specify the Rule 12 subsection that forms the basis for its motion and failed to supply this Court with any legal analysis demonstrating that its motion meets the applicable Rule 12 standard." *Plaintiff's Reply Brief* [Doc. #39] at 11, Pg. ID 363. As I noted in *Twohig v. Riley*, 2013 WL 3773365, *3-

---

(6th Cir.2003) ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."). It appears from the amended complaint that Plaintiff is not aware of the names of the individual responsible for filling and delivering his prescriptions.

4 (E.D. Mich. 2013), there has been a divergence of views concerning whether a motion to dismiss under 42 U.S.C. § 1997e(a) is properly characterized as a summary judgment motion, a Rule 12(b)(6) motion, or an unenumerated Rule 12(b) motion. Adopting the latter approach, I observed:

> "A number of courts have characterized a request to dismiss for failure to exhaust nonjudicial remedies as "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003); *see also Johnson v. Gregoire*, 2008 WL 5156428, *3 (W.D. Wash. 2008), citing *Ritza v. International Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (finding that "while no defense described in 12(b)(1) through (7) encompasses failure to exhaust, federal courts traditionally have entertained certain pre-answer motions not expressly provided for by rule, and authority to hear such motions lies in federal court's inherent power to regulate actions pending before it"); *Thrasher v. Garland L*, 2007 WL 3012615, *1-2 (W.D. Wash. 2007) ("The proper motion to bring when asserting failure to exhaust administrative remedies...is an unenumerated 12(b) motion...."). *Id*.

I therefore find no fault in Defendant not citing a specific provision of Fed.R.Civ.P. 12, since I have characterized a motion to dismiss on exhaustion grounds as an "unenumerated" Rule 12 motion. In terms of the Defendant's legal analysis, it clearly discusses the exhaustion requirement of the PLRA, including the *Woodford v. Ngo* requirement that an inmate fully comply with the prison's grievance procedure, and sets forth the MDOC policy directive and why Defendant claims Plaintiff did not complete the process through Step III. Plaintiff's argument that the Defendant has waived the exhaustion defense is without merit.

Citing *Harris v. Scott*, 2016 WL 4470786 (W.D. Mich. 2016), Plaintiff also argues that the Step III Grievance Report is insufficient to support Defendant's affirmative defense of exhaustion. In *Harris*, the defendants did not submit affidavits along with a Step III Grievance Report that was prepared by a student assistant.[5] *Id*. at *4. By contrast in the present case, Defendant has submitted the affidavit of Richard D. Russell, the Manager of the Grievance Section of the MDOC. Mr. Russell's affidavit describes in detail the grievance procedure that is available to MDOC inmates. *Affidavit*, ¶¶ 3-13, and the entry of all Step III appeals into a database:

> "If the appeal is complete, a grievance specialist assures that all tracking data including the grievance code assigned by the local grievance coordinator, is entered into the grievance tracking database." *Id*. ¶ 10.

Mr. Russell also provides facts showing that the Step III Grievance Report satisfies Fed.R.Ev. 803(6) as a record of regularly conducted activity:

> "Any documents referenced in this affidavit are records of regularly conducted activity of the Michigan Department of Corections. any records were made at or near the time of the occurrences reflected, by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters. Any documents are kept in the regular cuorse of business of the Michigan Department of Corrections. Any copy of these records attached to or accompanying this affidavit are true and accurate copies of the original records." *Id*. ¶17.

Our case is therefore distinguishable from *Harris*, and the Step III Grievance

---

[5] The Plaintiff mischaracterizes *Harris* as holding "that an affidavit showing that Plaintiff had not filed a Step III grievance was insufficient to show that plaintiff had not exhausted it[s] administrative remedies." In fact, the *Harris* Court found that Defendants "did not submit affidavits."

Report, along with Mr. Russell's affidavit, supports Defendant's allegation that Plaintiff did not exhaust any grievance through Step III of the administrative process.

Plaintiff also cites *Harris* for the proposition that "Defendants presented no evidence regarding the availability of the MDOC's grievance process...." *Plaintiff's Response* at 13, Pg. ID 365, quoting *Harris* at *4.  In addition, Plaintiff relies on *Ross v. Blake*, 136 S.Ct. 1850 (2016), where the Supreme Court reaffirmed the principle that under the PLRA, exhaustion is mandatory and that there is no "special circumstances" exception to the exhaustion requirement.  *Id*. at 1858.  However, the Court went on to discuss the single textual exception to exhaustion contained in the PLRA–that an inmate "must exhaust available remedies, but need not exhaust unavailable ones."  *Id*.  Noting that circumstances where an administrative remedy is unavailable "will not often arise," *Ross* delineated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Id*. at 1859.

First, an administrative remedy will be deemed unavailable where prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. The Court offered the following example:

> "Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office–but in practice that office disclaims the capacity to consider those petitions.  the procedure is not then 'capable of use' for the pertinent purpose." *Id*.

Secondly, a remedy is not available if the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism

-10-

exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. In other words, "when a remedy is...essentially 'unknowable'–so that no ordinary prisoner can make sense of what it demands–then it is also unavailable." *Id*.

Third, a remedy will be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

In our case, Defendant has submitted MDOC Policy Directive 03.02.130, which sets forth the grievance procedure in clear terms, along with the affidavit of Mr. Russell, who also describes the process in detail. This is a sufficient showing that the grievance procedure is "available" to all MDOC inmates. Plaintiff errs in suggesting that Defendant has a further burden at this point of essentially proving a negative: that the process is *not* capable of use, the it is *not* opaque or unknowable, and that prison officials did *not* thwart his attempt to file a grievance through intimidation, subterfuge, or otherwise. Rather, once a defendant carries the burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy, "the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014), citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)("[T]he burden shifts to the plaintiff to rebut by showing that

the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."). *See also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him.....").

Plaintiff has not met his burden of producing evidence that the MDOC grievance procedure was not available to him under the standards set forth in *Ross v. Blake*, nor does he make any argument that circumstances made it impossible for him to comply with that procedure. Rather, he argues that he is only required to make "affirmative efforts" to exhaust, referring to what purports to be a Step III grievance appeal form related to Grievance No. JCS 15-02-90-12F, attached to Plaintiff's Response [Doc. #39] as Exhibit A. This particular grievance involved Plaintiff's claim that he was not receiving his medications in a timely manner.[6]

---

[6] The Investigative Information section of the Step I response, submitted with Defendant's reply brief [Doc. #43] as Exhibit B, states:

> "Electronic Medical Record (EMR) was reviewed, reviewed MAXOR site for his refills and shipped dates and also an interview was conducted with the grievant. He states that he never receives his medications on time an that when he does receive them the dates on the medication cards have been changed to show he's getting them timely when he really is getting them 2 weeks late. Writer reviewed EMR to find out when medication refills are requested and looked information up on the MAXOR pharmacy website, also looked at his CHJ 404's which show meds ordered on 1/7/15, received 1/8/15 delivered to inmate on 1/9/15. In February, meds ordered on 2/4/15, received on 2/5/15, delivered to inmate on 2/6/15. Writer informed inmate that [he] was unsure as to what his complaint is because after researching his medications it appears he receives them timely, he continued to argue,

This grievance appeal form appears to indicate that Plaintiff's Step II appeal was received by the grievance respondent on March 5, 2015, and that a Step II response was returned to the Plaintiff on March 10, 2016. The Step III appeal information that Plaintiff has written is undated and unsigned. At the bottom, Plaintiff wrote "Before a civil suit becomes in effect for medical negligence."[7] Plaintiff does not affirmatively state that this Step III appeal was properly submitted to the Grievance and Appeals Section of the MDOC, as required by PD 03.02.130, § EE,[8] and thus exhausted. Again, he characterizes this as merely an "affirmative effort" to exhaust. Plaintiff's argument and exhibit are insufficient to rebut the Defendants' Step III Grievance Report and the affidavit of Mr. Russell showing that Plaintiff did not in fact submit any Step III grievance appeals during the relevant time period.

Finally, Plaintiff's argument that his "affirmative effort" to exhaust is enough to satisfy the PLRA is erroneous. *Woodford v. Ngo, supra*, makes it clear that "proper exhaustion" requires a prisoner to fully comply with the institution's grievance policy. As

---

stating that he does not receive them on time."

[7] In his amended complaint, ¶¶ 53-58, Plaintiff refers to a "notice of intent to sue." Any such notice, of course, is not a substitute for the exhaustion requirements of MDOC Policy Directive 03.02.130.

[8] "A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form(CSJ-247B) to the Grievance and Appeals Section within ten business days after receiving the Step II response...."

stated above, there is no evidence that the MDOC's grievance procedure was unavailable to the Plaintiff, or that he was unfairly stymied in his ability to pursue that procedure. The cases that Plaintiff cites–*Risher v. Lappin*, 639 F.3d 236 (6th Cir. 2011) and *Palmer v. Flore*, 3 Fed.Supp.3d 632 (E.D. Mich. 2014)–are factually distinguishable. In *Risher*, which involved a federal inmate, the plaintiff's efforts to exhaust were frustrated by the Bureau of Prisons' ("BOP's") failure to deliver the Regional Director's grievance response to him, which prevented him from submitting that response to the Central Office (the next step in the grievance process), as required by BOP regulations. The plaintiff nonetheless attempted to follow the regulations by submitting an appeal that treated the Regional Director's failure to respond as a denial of his grievance. Quoting *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004), the Sixth Circuit noted that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." 639 F.3d at 240.

Likewise in *Palmer v. Flores*, which relied on *Risher*, the plaintiff, who was in administrative segregation, did not receive a response to his Step I grievance, and was unable to obtain the forms for an appeal to Step II. Citing *Boyd*, the Court found that administrative remedies were exhausted when the MDOC did not timely respond to the plaintiff's Step I grievance.

In the present case, the Plaintiff does not assert that he did not receive a timely reply to his grievance. In fact, his own exhibit shows that he received a response to his

-14-

Step II appeal five days after he filed it.[9] There was nothing to prevent him from filing a Step III appeal.

Defendant has carried its burden of proving its affirmative defense of non-exhaustion, and the MDOC should therefore be dismissed without prejudice.

## IV.  CONCLUSION

I recommend that the Defendant's Motion to Dismiss [Doc. #37] be GRANTED, and that the amended complaint be DISMISSED WITHOUT PREJUDICE as to Defendant MDOC.

---

[9] In any event, under the current version of the MDOC Policy Directive, *Boyd* no longer excuses an inmate from completing the grievance process through Step III, even where he or she has not received a response, because the Policy Directive explicitly makes further administrative proceedings available even in the absence of a timely response at Step I or Step II. PD 03.02.130, § T provides:

> "If a grievant chooses to pursue a grievance which has not been responded to by staff within required time frames, including any extensions granted, the grievant may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired, including any extensions which have been granted."

In addition, ¶ FF states:

> "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions."

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 24, 2017

## CERTIFICATE OF SERVICE

      I hereby certify on July 24, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 24, 2017.

                                    s/Carolyn Ciesla
                                    Case Manager to
                                    Magistrate Judge R. Steven Whalen