## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: July 21, 2023

Ms. Carla Aikens
615 Griswold Street
Suite 709
Detroit, MI 48226-3900

Ms. Christina A. Ginter
Kitch Drutchas Wagner Valitutti & Sherbrook
1 Woodward Avenue
Suite 2400
Detroit, MI 48103

Mr. Jonathan Lanesky
Chapman Law Group
1441 W. Long Lake Road
Suite 310
Troy, MI 48098

Mr. Anthony D. Pignotti
Foley, Baron, Metzger & Juip
38777 Six Mile Road
Suite 300
Livonia, MI 48152

Mr. Nicholas Pillow
Chapman Law Group
1441 W. Long Lake Road
Suite 310
Troy, MI 48098

Mr. John L. Thurber
Office of the Attorney General of Michigan
P.O. Box 30217
Lansing, MI 48909

Re: Case No. 22-1863, *Carl Bennett v. MDOC, et al*
Originating Case No. : 2:15-cv-14465

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                        Sincerely yours,

                                          s/Cathryn Lovely
                                          Opinions Deputy

cc:  Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0336n.06

No. 22-1863

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| CARL BENNETT,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>MICHIGAN DEPARTMENT OF CORRECTIONS; JACKSON ALLEGIANCE HOSPITAL; JOHN DOE, staff involved in surgery; MAHENDER MACHA; CHRISTINE AUSMUS; LISA WURMLINGER; DAVID WRIGHT; LATOYA CAULFORD; QUINN LAFLEUR; SHERRI WINTER; MARGUERITE WALKER; ALLINE CURTIS; JUDY CRISENBERRY; ISAAC ALEXIS; SHERRIFF DEPUTY JOHN DOE II; RICHARD ROE; RICHARD ROE II; HEIDI E. WASHINGTON; JOE BARRETT, Warden; SHIRLEE HARRY, Warden; JEFFREY WOODS; CONNIE HORTON,<br><br>    Defendants-Appellees. | **FILED**<br>Jul 21, 2023<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br>OPINION |

Before: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Carl Bennett alleged that while in the custody of the Michigan Department of Corrections ("MDOC") he was deprived of necessary and adequate medical care for his heart condition, in violation of his federal constitutional and statutory rights. The district court found that Bennett had failed to exhaust his available administrative remedies and accordingly dismissed Bennett's claims. For the reasons that follow, we **GRANT** the motion to lift the stay in bankruptcy as to the proceedings against Isaac Alexis, David Wright,

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

and Quinn LaFleur; **DISMISS** Isaac Alexis as a party to this appeal; and **AFFIRM** the district court's judgment.

## I. BACKGROUND

Bennett entered MDOC custody in December 2013. R. 121 (4th Am. Compl. ¶ 40) (Page ID #1657). Twelve days later, Bennett suffered a heart attack. *Id.* ¶ 46 (Page ID #1657). He was transported to Jackson Allegiance Hospital, where a single-graft coronary artery bypass surgery was performed. *Id.* ¶ 50, 55 (Page ID #1658). According to Bennett, no further treatment was rendered because he had contracted pneumonia while hospitalized. *Id.* ¶ 55 (Page ID #1658).

Bennett was subsequently discharged to Duane Waters Hospital, an MDOC-operated facility. *Id.* ¶ 56 (Page ID #1658). Bennett alleged that medical staff at Duane Waters gave him "only three out of the fourteen medications prescribed by his physician" after his surgery. *Id.* ¶ 59 (Page ID #1658). He filed a grievance regarding this issue in January 2014. *Id.* ¶ 61 (Page ID #1659). After Bennett was released from Duane Waters, MDOC staff again restricted his access to his medication for approximately five days in February 2014. *Id.* ¶ 65 (Page ID #1659). The next month, he filed a Step II appeal of his grievance due to the ongoing issues with his medication. *Id.* ¶ 66 (Page ID #1659).

Bennett continued to experience chest pain after his surgery and was sent back to Jackson Allegiance for a cardiac catheterization procedure. *Id.* ¶ 71–72 (Page ID #1660). In July 2014, he was admitted to McLaren Hospital, where diagnostic procedures revealed that Bennett had several cardiac issues that were unaddressed by his original surgery at Jackson Allegiance, as well as new issues that had developed since the surgery. *Id.* ¶ 75–76 (Page ID #1660–61). Bennett underwent surgery at McLaren "to redo the sternotomy from the previous surgery and add three additional

Case 2:15-cv-14465-MFL-RSW ECF No. 242, PageID.3871 Filed 07/31/2023 Page 5 of 14 (5 of 14)

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

grafts." *Id.* ¶ 78–79 (Page ID #1661). After his second surgery, however, Bennett "continued to have problems with obtaining his medication in a timely manner." *Id.* ¶ 79 (Page ID #1661). Bennett alleged that he "was routinely denied said medications" until his release from MDOC custody in March 2017. *Id.* ¶ 81 (Page ID #1661).

In December 2015, prior to his release from MDOC custody, Bennett filed a complaint in the United States District Court for the Eastern District of Michigan. R. 1 (Compl. at 1) (Page ID #1). The operative complaint, however, was filed in September 2019, after Bennett's release from MDOC custody. R. 121 (4th Am. Compl. ¶ 81) (Page ID #1661). It alleged that the defendants violated Bennett's Eighth and Fourteenth Amendment rights by depriving him of necessary and adequate medical care while he was in MDOC custody. *Id.* ¶ 107 (Page ID #1668). The complaint further alleged that the defendants violated the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") by discriminating against Bennett and failing to provide him with reasonable accommodations. *Id.* ¶¶ 119–39 (Page ID #1668–75). Finally, the complaint alleged negligent infliction of emotional distress resulting from the defendants' conduct. *Id.* ¶¶ 140–44 (Page ID #1675–76). Bennett raised claims against two sets of defendants: (1) the Corizon defendants, Isaac Alexis, David Wright, and Quinn LaFleur, medical providers employed by Corizon Health, Inc. ("Corizon"); and (2) the MDOC defendants, consisting of the MDOC itself and numerous MDOC employees. *Id.* ¶¶ 6–39 (Page ID #1652–57); R. 125 (Corizon Defs. Answer 4th Am. Compl. ¶¶ 18, 30, 36) (Page ID #1690, 1692, 1694).

3

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

In November 2021, the district court held a bench trial on the issue of whether Bennett had failed to exhaust the administrative remedies that were available to him prior to bringing suit, an affirmative defense raised by the defendants. R. 209 (Order Dismissing Claims at 2) (Page ID #3279). Following the trial, the district court found "that Bennett failed to exhaust his available administrative remedies with respect [to] his remaining claims against all of the remaining Defendants in this action other than Kay Garland."[1] *Id.* In reaching that conclusion, the district court found the "testimony and the documentary evidence presented by the MDOC Defendants to be credible and reliable," and concluded that the "evidence is more than sufficient to support findings that the grievance process was available to Bennett and that Bennett did not exhaust his available administrative remedies with respect to any of his remaining claims against the Defendants." *Id.* at 9 (Page ID #3286). Accordingly, the district court dismissed Bennett's claims against all defendants, with the exception of Garland. *Id.* at 25 (Page ID #3302).

Bennett subsequently moved for reconsideration of the district court's order, raising for the first time the argument that, because he was not in MDOC custody at the time the operative complaint was filed, the requirement of exhaustion of administrative remedies did not apply to him. R. 216 (Mot. Recons. ¶ 3) (Page ID #3532). The district court denied Bennett's motion, finding that Bennett should have raised this argument prior to the district court entering judgment against him. R. 225 (Order Den. Mot. Recons. at 4–6) (Page ID #3658–60). The district court dismissed the claims against Garland and issued a final judgment. R. 232 (Judgment) (Page ID #3675). Bennett now timely appeals. R. 235 (Notice of Appeal) (Page ID #3684).

---

[1] Kay Garland is not a party to this appeal.

4

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

## II. ANALYSIS

### A. Standard of Review

"We review *de novo* the district court's '[d]ismissal of a prisoner's civil rights claim for failure to exhaust administrative remedies.'" *Mattox v. Edelman*, 851 F.3d 583, 589 (6th Cir. 2017) (quoting *Risher v. Lappin*, 639 F.3d 236, 239 (6th Cir. 2011) (alteration in original)). Because the district court conducted a bench trial on the issue of exhaustion, our usual standards of review following a bench trial apply. "This court reviews a district court's finding of facts made after a bench trial for clear error and reviews a district court's conclusions of law de novo." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 402 (6th Cir. 1999). "When reviewing for clear error, we must affirm the trial court unless we are left with the definite and firm conviction that a mistake has been committed." *Id.*

### B. Applicability of the Administrative Exhaustion Requirement

Bennett again raises the argument that he first raised in his motion for reconsideration, that the administrative-exhaustion requirement of the Prison Litigation Reform Act ("PLRA") does not apply to this case because he was no longer incarcerated when he filed the operative complaint. Appellant Br. at 19. The appellees argue that the district court was correct in finding that Bennett's argument was untimely. MDOC Defs. Br. at 12. We agree with the district court.

We have previously held that issues are forfeited "when they are raised for the first time in motions requesting reconsideration." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *see also Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996) (holding that an issue is not preserved for appeal if it is raised for the first time in a motion to amend or alter the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure). Bennett, who was

5

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

represented by counsel below, had numerous opportunities to raise this argument before or during the bench trial on the issue of exhaustion, or even in the post-trial briefing allowed by the district court. Instead, he waited to raise the issue in his motion for reconsideration pursuant to Rule 59(e). Accordingly, his argument was untimely in the district court and has not been properly preserved for appeal.

## C.  Availability of Administrative Remedies

Next, Bennett argues that the administrative remedies set forth by MDOC policies were unavailable to him, thus excusing his failure to fully exhaust his remedies. Appellant Br. at 25–30. According to Bennett, he was often transferred to different MDOC facilities while in the middle of the grievance process, which hampered his ability to proceed through the entire process in a timely manner. *Id.*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As we have explained, "[t]here is no uniform federal exhaustion standard." *Mattox*, 851 F.3d at 590. Instead, "[a] prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Id.* We require a plaintiff "to make 'affirmative efforts to comply with the administrative procedures,' and analyze[] whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier v. Laurel County*, 636 F.3d 218, 223–24 (6th Cir. 2011)). An incarcerated individual "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). There are three circumstances in which remedies are considered

6

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

to be unavailable: (1) where an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. "Generally, '[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility "unavailable" for purposes of exhaustion.'" *Napier*, 636 F.3d at 223 (quoting *Blakey v. Beckstrom*, No. 06-163-HRW, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007) (alteration in original)).

The MDOC requires that incarcerated individuals follow a three-step grievance process in order to exhaust their administrative remedies. R. 129-2 (MDOC Policy Directive 03.02.130(B)) (Page ID #1797). At the bench trial, the defendants presented testimony from Richard Russell, the MDOC grievance section manager and hearings administrator, who confirmed that "going through all three steps of the grievance process" is necessary for an individual to exhaust their administrative remedies. R. 196 (Trial Tr. at 22) (Page ID #2847). Russell further agreed that even if an individual "does not receive a Step II response within the allotted period of time under the policy, then the[y] can automatically appeal that grievance to Step III without having to go through any staff member." *Id.* at 31–32 (Page ID #2856–57). Russell repeatedly testified that Bennett did not follow the grievance process through to Step III of MDOC's policy with regard to any grievance that he filed while in MDOC custody. *Id.* at 36–38, 47–54 (Page ID #2861–63, 2872–79). Russell's testimony on this point was confirmed by Bennett's "MDOC Prisoner Step III Grievance Report," which showed that MDOC had not received any Step III appeals from

7

Bennett while he was incarcerated. R. 129-3 (Step III Grievance Report) (Page ID #1813). Thus, Bennett plainly did not exhaust the administrative remedies required by MDOC policy.

Bennett's testimony at the bench trial undermines his arguments that the administrative remedies required by MDOC were unavailable to him. When explaining his frustration at the grievance process being interrupted by his transfers to other MDOC facilities, Bennett stated that:

> [T]hey still had grievances in there but by the time I got there, it was already—it was already time-related because then by the time I would have to send it back to the other facility, I said why should I have to do that? You're one . . . MDOC. There shouldn't—I should not have to send it back to one facility and then to another. That doesn't even make sense. But that's—I don't know, I guess that's the way they do it. Like I said, I'm not very good at stuff like that. I never did like getting into that kind of, grievances and all that crap.

R. 196 (Trial Tr. at 122) (Page ID #2947). When asked about whether he thought he needed to restart the grievance process upon being transferred to a new facility, Bennett replied:

> Yes. I didn't know that at first because they said you have to send it back to the facility. I said why? It's like I'm at another facility, I'm still in Michigan. And they said I had to go back to the same facility or send them the letter or go through the prisoner mail and do it that way or go to a counselor and have him do it and I'm like, oh my God. That's pretty—I don't know. To me, that's just a little ignorance but it doesn't make sense to me.

*Id.* at 124 (Page ID #2949). Bennett's testimony suggests that the grievance process was in fact still open to him despite his transfer to a new facility, but that he simply disapproved of the procedures that he would have to follow. Although the process for pursuing a grievance following a transfer might be frustrating and burdensome, it does not rise to the level of being "a simple dead end" or "so opaque that it . . . [is] incapable of use." *Ross*, 578 U.S. at 643. And Bennett's testimony also shows that MDOC officials explained the steps he had to take in order to continue the grievance process following his transfer, thus he was not "thwart[ed] . . . from taking advantage

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

of" the administrative process. *Id.* at 644. Bennett therefore failed to show that his frequent transfers to other MDOC facilities rendered the three-step grievance process unavailable to him.

To the extent that Bennett argues that the process was unavailable to him because officials prevented him from filing a Step III appeal with regard to one of his grievances, that argument is also supported by insufficient evidence. Although Bennett argues that his mother's attempts to mail a Step III grievance form on his behalf were blocked, he did not produce any credible evidence to show that this was the case. During the bench trial, his mother testified that she never looked at the document that Bennett asked her to mail, that she could not confirm that it was the Step III appeal form, and that she could not recall critical facts, such as the address to which the form was mailed. R. 196 (Trial Tr. at 147) (Page ID #2972). As the district court correctly noted, Bennett's other testimony on this issue seemed unreliable. R. 209 (Order Dismissing Claims at 17) (Page ID #3294). And Bennett's isolated claim that a single grievance counselor threw one of his grievances in the trash—admittedly troubling behavior from a prison official, if true—is not sufficient to rise to the level of "machination, misrepresentation, or intimidation" necessary to render the administrative process unavailable to him. *Ross*, 578 U.S. at 644. This is particularly true given that Bennett could "not identify which grievance was thrown out, the subject of the grievance (*i.e.*, whether the grievance related to any claims raised in this case), the prison counselor who threw the grievance away, the date when the grievance was thrown away, or any other specific information about this incident." R. 209 (Order Dismissing Claims at 18) (Page ID #3295); *see also* R. 196 (Trial Tr. at 120–21) (Page ID #2945–46). Bennett therefore has not given us reason to question the district court's rejection of his argument that the administrative remedies required

9

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

by MDOC policy were unavailable to him. We therefore affirm the district court's conclusion that Bennett did not properly exhaust his administrative remedies.

### D. Applicability of the Exhaustion Requirement as to Grievances Against the Corizon Defendants

While this appeal was proceeding, Corizon filed a Chapter 11 bankruptcy petition, which resulted in an automatic stay of judicial proceedings against it, pursuant to 11 U.S.C. § 362(a). 6th Cir. R. 30 (Notice of Automatic Stay at 1–2). Although Corizon itself is not a party to this appeal, it is the insurance carrier of the individual Corizon defendants, Alexis, LaFleur, and Wright. *Id.* Accordingly, we issued an order holding this appeal in abeyance as to Alexis, LaFleur, and Wright. 6th Cir. R. 33 (Abeyance Order at 1). The individual Corizon defendants have since moved to lift the stay in bankruptcy and dismiss Alexis as a party to this appeal. 6th Cir. R. 38 (Notice Regarding Representation at 1–3). We will grant their motion.

First, the Corizon defendants indicate to us that they have retained private counsel and thus are no longer being provided representation for this appeal by their insurance carrier, Corizon. *Id.* Because Corizon itself is not a party to this appeal, and because Corizon is no longer responsible for the representation of the individual Corizon defendants, this appeal is no longer "a judicial, administrative, or other action or proceeding against the debtor" and thus the automatic stay does not apply. 11 U.S.C. § 362(a)(1). Second, Alexis was dismissed as a party to this case in the district court before the case proceeded to a bench trial on the exhaustion issue. That is because the district court granted Alexis's motion for summary judgment on all claims against him as time-barred under the statute of limitations. R. 173 (Order Mot. Summ. J. Corizon Defs. at 10) (Page ID #2486). Because Bennett does not appeal that order, nor does he raise any arguments in his briefing regarding the time-barred claims, we agree that Alexis ought to be dismissed as a party to

10

No. 22-1863, *Bennett v. Mich. Dep't of Corr. et al.*

this appeal. Accordingly, we now consider Bennett's arguments as to his claims against Wright and LaFleur on the merits.

Bennett argues that he was not required to exhaust his claims against the Corizon defendants, because the relevant MDOC policies apply to grievances against MDOC and its employees, and not to private medical providers. Appellant Br. at 31–32. We have previously rejected an identical argument, albeit in an unpublished order, reasoning that "[c]ourts in this circuit have recognized that a prisoner must file a grievance against service providers like Corizon to exhaust administrative remedies." *Kitchen v. Snyder*, No. 20-1936, 2021 WL 4470032, at *4 (6th Cir. June 23, 2021). Likewise, we have previously required plaintiffs to exhaust their administrative remedies with respect to claims against private medical providers. *See Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009). Bennett points to no section of the MDOC policy, nor can we find any section of the MDOC policy, that would have prevented him from filing a grievance against the Corizon defendants while he was incarcerated. *See* R. 129-2 (MDOC Policy Directive 03.02.130) (Page ID #1797). And nothing in the language of the PLRA suggests that the exhaustion requirement does not apply to certain defendants. *See* 42 U.S.C. § 1997e(a). We therefore conclude that Bennett was required to exhaust his administrative remedies with respect to his claims against the Corizon defendants.

### III. CONCLUSION

For the foregoing reasons, we **GRANT** the motion to lift the stay in bankruptcy as to the proceedings against Isaac Alexis, David Wright, and Quinn LaFleur; **DISMISS** Isaac Alexis as a party to this appeal; and **AFFIRM** the district court's judgment.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-1863

CARL BENNETT,

    Plaintiff - Appellant,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS; JACKSON ALLEGIANCE HOSPITAL; JOHN DOE, staff involved in surgery; MAHENDER MACHA; CHRISTINE AUSMUS; LISA WURMLINGER; DAVID WRIGHT; LATOYA CAULFORD; QUINN LAFLEUR; SHERRI WINTER; MARGUERITE WALKER; ALLINE CURTIS; JUDY CRISENBERRY; ISAAC ALEXIS; SHERRIFF DEPUTY JOHN DOE II; RICHARD ROE; RICHARD ROE II; HEIDI E. WASHINGTON; JOE BARRETT, Warden; SHIRLEE HARRY, Warden; JEFFREY WOODS; CONNIE HORTON,

    Defendants - Appellees.

**FILED**
Jul 21, 2023
DEBORAH S. HUNT, Clerk

Before: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the motion to lift the stay in the bankruptcy court as to Isaac Alexis, David Wright, and Quinn LaFleur is GRANTED, Isaac Alexis is DISMISSED as a party to this appeal, and the district court's judgment is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk